IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BRIAN BRANT, BROOKE FRITZ, ROBERT CALDWELL and MAYENSSI MONTIEL, Each Individually and on Behalf of All Others Similarly Situated;<br><br>Plaintiffs,<br><br>v.<br><br>PARKING REVENUE RECOVERY SERVICES, INC., a Colorado Corporation,<br><br>Defendant. | Case No.: 1:25-cv-1771-NRN<br><br>**RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**JURY TRIAL DEMANDED** |

**RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

### I.      INTRODUCTION

Plaintiff cannot be compelled to arbitration because she formed no agreement with Defendant to arbitrate. The signs at the 400 East 3rd Street garage where Plaintiff parked and received her illegal notice of noncompliance are insufficient to create a contract because they fail to notify individuals parking in the garage of the arbitration terms. But even if the signs are technically sufficient, they are so poorly designed and one-sided as to be unconscionable and unenforceable.

### II.     LEGAL STANDARD

While arbitration agreements are governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Ramirez v. Domino's Pizza Supply Chain*, No. 24-CV-01731-SKC-STV, 2024 WL 5452684, at *2 (D. Colo. Nov. 8, 2024), *adopted at* No. 24-CV-01731-SKC-STV, 2025 WL 414381 (D. Colo. Feb. 6, 2025). This preliminary question of whether

1

the parties agreed to arbitrate "must always be decided by a court," using "ordinary principles governing contract formation." *Munoz v. Conduent State & Loc. Sols., Inc.*, No. 24-2044, 2025 WL 799482, at *5-6 (10th Cir. Mar. 13, 2025) (quoting *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020)). Only after determining whether a valid agreement to arbitrate exists may a Court consider whether the parties' dispute falls under the agreement. *Id*.

While the FAA harbors a "liberal policy favoring arbitration agreements," courts are not permitted to favor arbitration over litigation but must treat arbitration agreements "as enforceable as other contracts, but not more so." *Brock v. Flowers Foods, Inc.*, 121 F.4th 753, 760 (10th Cir. 2024) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022)). When analyzing a motion to compel arbitration, courts in this Circuit apply "a standard similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005). The party seeking enforcement of the arbitration provision "must present evidence sufficient to demonstrate an enforceable arbitration agreement." *Id*. Then the burden shifts to the opposing party "to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id*.

### III.   ARGUMENT

The Court cannot compel arbitration in this case because no agreement to arbitrate existed. It is axiomatic that parties to a contract must know the terms to which they are agreeing prior to acceptance and contract formation, but Defendant's signage at the Little Rock parking facility where Plaintiff parked is so inconspicuously and poorly placed that nobody entering the facility could possibly be put on notice as to its terms. Regardless, even if this Court determines that Plaintiff was on notice as to the arbitration terms, the agreement is unconscionable and cannot be

2

enforced. Accordingly, Defendant has failed to demonstrate the existence of an enforceable agreement to arbitrate and its Motion to Compel must be denied.

**A.     The parties did not form a contract because there was no mutual agreement.**

As Defendant notes in its Motion to Compel, contact law in Arkansas and Colorado run parallel, and application of either state's law would result in an identical outcome on this issue. Accordingly, the law applied is irrelevant because the result is the same: no contact exists in this case because Plaintiff was not made aware of the terms of the contract to which she ostensibly entered.

1.     <u>No contract is formed absent mutual agreement with notice as to the terms.</u>

Under relevant law, courts "cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract." *Alltel Corp. v. Sumner*, 360 Ark. 573, 576–77, 203 S.W.3d 77, 80 (2005). Further, "it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators," and "[b]oth parties must manifest assent to the particular terms of the contract." *Id.* (citing *Williamson v. Sanofi Winthrop Pharm., Inc.,* 347 Ark. 89, 60 S.W.3d 428 (2001); *Van Camp v. Van Camp,* 333 Ark. 320, 969 S.W.2d 184 (1998)). In examining whether a party has assented to an agreement's terms, "'the threshold issue' is whether the consumer had 'reasonable notice, either actual or constructive, of the terms of the putative agreement' and whether the 'consumer manifest[ed] assent to those terms.'" *In re HomeAdvisor, Inc. Litig.*, No. 16-CV-01849-PAB-KLM, 2019 WL 4463890, at *3 (D. Colo. Sept. 17, 2019) (quoting *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012)).

"When a party is unaware of a term of a contract because it was hidden or obscured, there can be no presumption that there was a meeting of the minds as to such term." *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1026 (D. Colo. 2012); *see also Erwin-Keith, Inc. v. Stewart*, 2018

3

Ark. App. 147, 9–10, 546 S.W.3d 508, 513 (2018) ("For a party to assent to a contract, the terms of the contract, including an arbitration agreement, must be effectively communicated."). Thus, this Court may only enforce the arbitration terms if those terms were "reasonably conspicuous," and Plaintiff's alleged assent was "unambiguous." *Grosvenor*, 854 F. Supp. 2d at 1026 (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002)).

        2.    <u>Plaintiff had no notice of the arbitration terms and there was no mutual agreement.</u>

Defendant claims that Plaintiff received notice via a sign placed at the entrance to the 400 East 3rd Street parking garage ("East 3rd Street garage") where Plaintiff parked and received her illegal Notice of Noncompliance from Defendant, but this sign that purportedly binds Plaintiff to Defendant's arbitration terms are too inconspicuously placed to put any driver entering the facility on notice that he or she is waiving the right to a trial by jury by parking within.

On April 26, 2025, when Plaintiff parked at the East 3rd Street garage, the facility contained 45 signs. Decl. of Mayenssi Montiel ("Decl. Montiel") ¶ 10–11, attached as Ex. 1. Of those 45 signs, 44 signs provide payment instructions and a QR code that launch Defendant's payment portal when scanned. *Id.* at ¶ 11. The "Pay at this Sign" signs do not contain any notice of additional terms and conditions. *See* Payment Sign, attached as Ex. 2; Decl. Montiel ¶ 7. Moreover, the payment portal itself does not contain any notice of additional terms and conditions. *See* Payment Portal, attached as Ex. 3; Decl. Montiel ¶ 7. When paying through the portal, Plaintiff was not required to click a checkbox acknowledging terms and conditions, nor did the portal contain any pop-up notification or conspicuous notice that arbitration terms applied. Decl. Montiel ¶ 7.

The East 3rd Street garage contains exactly one sign providing notice or arbitration terms, and as shown in Exhibit 2 to Defendant's Motion to Compel (ECF No. 9-3), the positioning of that sign is woefully inadequate to place drivers on notice of the arbitration terms. Rather than being prominently placed in a driver's direct line of sight, the sign faces the side of vehicles entering or

4

exiting the facility. *See* Ex. 2 to Def.'s Mot. to Compel, ECF No. 9-3; Decl. of Mayenssi Montiel ("Decl. Montiel") ¶ 12, attached as Exhibit 1. The bottom of the sign appears to sit four or five feet off the ground, meaning the bottom of the sign is a foot or two above the head of a driver seated in a low-clearance sedan such as the vehicle Plaintiff was driving on April 26 when she entered the facility. Decl. Montiel ¶ 13.

Defendant has put no mechanism in place by which it can ensure drivers entering the East 3rd Street garage have actual or inferred notice of the arbitration terms. There is no barrier to entry such as a gate, nor is there any indication that drivers should slow down to read a sign such as a stop sign or a speed bump. Decl. Montiel ¶ 5. The sign is not only positioned such that it is not easily seen from the driver's seat of a vehicle, it is on a post so close to the street that cars pausing to read the terms or scan the QR codes will sit unsafely halfway in the street. *Id*. at ¶ 12. This is a particular issue when there is a line of cars entering the facility; drivers do not want to stop to check above their heads for a terms and conditions sign when they may cause an accident on the street behind them by stopping in the entryway. *See id*. at ¶ 6. The QR codes at the bottom of the sign do not provide access to the payment portal; they launch static websites that contain nothing but Defendant's terms and conditions. *Id*. at ¶ 14. Thus, Defendant has no way of knowing whether drivers entering the East 3rd Street garage stop to read their terms or scan the QR codes to access the online terms and conditions and cannot ensure that all drivers are aware that they are purportedly agreeing to waive their right to a jury trial by parking within, and Defendant may not enforce an arbitration term against a party who cannot be charged with knowledge of the term. *See, e.g.*, *Shockley v. PrimeLending*, 929 F.3d 1012, 1019 (8th Cir. 2019).

Defendant cannot enforce arbitration on such bare and one-sided notice that the terms exist. Defendant likens this case to other lawsuits in which it has defended its predatory practices and was able to compel the plaintiffs to arbitration, but Defendant was apparently more meticulous in

5

its sign placement at the facilities at issue in those cases. In *Tobey v. Ace Parking Management*, the Northern District of Texas specifically noted that Defendant's parking garage "ha[d] **several signs dotting the lot** informing those who see them that 'This is a Contract' and that 'By parking on this Facility, you accept all these terms.'" No. 3:24-CV-2932-X, 2025 WL 1919887, at *1 (N.D. Tex. July 11, 2025) (emphasis added). Later, the court specifically addressed the conspicuousness of the terms and noted that the plaintiff had paid for parking at a kiosk on which was a prominent red sticker notifying him of the arbitration terms. *Id*. at *2–3. Unlike here, the plaintiff in *Tobey* was required to stop and pay before entering the facility and was directly confronted with a conspicuously placed sticker containing arbitration terms prior to entering the facility. *Id*. Moreover, just in case the *Tobey* plaintiff missed it on entering, the facility contained several other signs stating the terms spread throughout, whereas the East 3rd Street garage contained a single, poorly placed, and illegible sign. *Id*. at *1.

This is equally true of Defendant's reliance on *Butler v. Asura Technologies USA, Inc.*, No. 1:24-cv-529 (D. Col.). While the *Butler* court did not specifically examine the conspicuousness of the signs in the manner of the *Tobey* court, it did note that the facility at issue had "**large** red signs at the entrance to the parking lots" and "the red signs were posted conspicuously **throughout the lots** where Plaintiffs parked." Order, *Butler*, No. 1:24-cv-529 (D. Col. Oct. 7, 2024), ECF No. 33 at p. 5 (emphasis added). Again, here the single sign containing arbitration terms is small and elevated to a height to make it difficult to read.

Plaintiff neither saw nor read the poorly placed sign at the East 3rd Street garage. Decl. Montiel ¶ 5, 16. Plaintiff entered the garage around 8:00 pm on April 26, 2025, when it was already dark, and she did not notice the sign that was facing the opposite direction as she was on entering and hanging above the roof of her vehicle, likely because the placement of the sign was such that the roof of her vehicle blocked it from view. *Id*. at ¶ 5, 13. The only signs visible to Plaintiff when

6

she entered the garage were the signs instructing individuals on how to pay and providing the QR code to access the payment portal. *Id*. at ¶ 5, 6. Plaintiff paid through the portal by scanning the QR code, but was never prompted to agree to additional terms or conditions, nor was she notified that other terms and conditions existed. *Id*. at ¶ 7. Plaintiff was never put on notice that by parking at the East 3rd Street garage she was waiving her right to a trial by jury. Because there was no mutual agreement as to this term, there is no contract to enforce.

B.   **If an agreement was made, it is unconscionable and unenforceable.**

Should the Court determine that the red sign shown in Exhibit 2 to Defendant's Motion to Compel was sufficient to notify Plaintiff of the arbitration terms and she manifested her assent to those terms by parking in the garage, it should still decline to compel arbitration because the terms are unconscionable. Plaintiff specifically challenges not only the arbitration requirement itself, but also independently challenges the delegation clause of the arbitration section within the terms and conditions, which does not even appear on the red sign that Defendant claims puts drivers on notice of the arbitration terms.[1] The delegation clause is only accessible by scanning the QR code on the red entrance sign, which is only visible to drivers who happen to be looking in the right direction and can safely pause long enough to scan the code without blocking oncoming traffic. The Court should decline to enforce the unconscionable delegation clause and determine the arbitration terms as a whole are unconscionable and unenforceable.

1.   <u>Courts examine both procedural and substantive unconscionability in assessing the enforceability of arbitration terms.</u>

In analyzing the unconscionability of arbitration agreements, courts examine two categories: (1) procedural, and (2) substantive unconscionability. *Enderlin v. XM Satellite Radio*

---

[1] The full terms and conditions can be found at https://prrsparking.com/termsandcond.html (last visited July 25, 2025).

7

*Holdings, Inc.*, No. 4:06-CV-0032 GTE, 2008 WL 830262, at *13 (E.D. Ark. Mar. 25, 2008) (citing *Davidson v. Cingular Wireless LLC*, No. 2:06CV00133-WRW, 2007 WL 896349 (E.D. Ark. Mar. 23, 2007)); *see also Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1371 (D. Colo. 2014). "[A] contract to arbitrate is unenforceable under the doctrine of unconscionability when there is both a procedural and substantive element of unconscionability, but procedural and substantive unconscionability need not be present in the same degree." *Enderlin*, 2008 WL 830262, at *13 (quoting *Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101, 1105–06 (9th Cir. 2003)) (internal quotations omitted). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. (quoting *Mantor*, 335 F.3d at 1106).

> Courts use a number of factors to determine the unconscionability of a contract:
>
>> (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect.

*Nesbitt*, 74 F. Supp. 3d at 1371 (quoting *Bernal v. Burnett*, 793 F. Supp. 2d 1280, 1286 (D. Colo. 2011)). Courts should "review the totality of the circumstances surrounding the negotiation and execution" in assessing whether a contractual provision is unconscionable, and "[t]wo important considerations are whether there is a gross inequality of bargaining power between the parties and whether the aggrieved party was made aware of and comprehended the provision in question." *Enderlin*, 2008 WL 830262, at *11 (quoting *Casteel v. Clear Channel Broadcasting, Inc.,* 254 F.Supp.2d 1081, 1089 (W.D. Ark. 2003)).

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Enderlin*, 2008 WL 830262, at *11 (quoting *Kinkle v. Cingular Wireless LLC,* 857 N.E.2d 250, 254 (Ill. 2006)). "Courts look to the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Id.* (citing *Davidson,* 2007 WL 896349, at *5); *see also Nesbitt*, 74 F. Supp. 3d at 1371.

"Substantive unconscionability looks to the actual terms of the contract to see if they are one-sided." *Enderlin*, 2008 WL 830262, at *13 (quoting *Davidson,* 2007 WL 896349, at *5). Substantive unconscionability also "concerns the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Id*. (quoting *Mantor,* 335 F.3d at 1107). A plaintiff may demonstrate substantive unconscionability "where there is an 'absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated' or where the terms of the contract suggest a lack of 'substantive fairness.'" *Vernon*, 857 F. Supp. 2d at 1157 (quoting *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)).

2. <u>The arbitration terms are procedurally unconscionable.</u>

As described above, the sign that purported to notify Plaintiff of the arbitration terms was so poorly constructed as to be unconscionable. Rather than facing drivers as they approached, the sign faced the side of vehicles as they entered, is not lit at night, was positioned above the roof of low clearance vehicles, and was so close to the street that drivers could not safely pause to read the terms. Decl. Montiel ¶ 5, 12–13.

Recent decades are rife with litigation concerning the various manners in which defendants attempt to bury their arbitration terms as a trap for the unwary, but courts have consistently held that plaintiffs cannot be compelled to arbitration when the arbitration terms are so inconspicuously

placed that they are insufficient to notify the recipient of the contractual nature of the notice. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) ("an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious").

Defendant cannot enforce arbitration terms that it deliberately obscures by placing them on an illegible sign that cannot be seen or read from the vantage point at which viewers would be expected to see it. The sign is purported to bind individuals parking at the East 3rd Street garage, all of whom will be driving into the facility, but the sign is hung such that it cannot be easily seen from inside a car. Decl. Montiel ¶ 12–13. Moreover, the QR code on the sign that brings the viewer to Defendant's full terms and conditions was not safely scannable from the driver's seat of a vehicle entering the facility. *Id*. at ¶ 12. The full terms and conditions are not otherwise available on any sign within the East 3rd Street garage, nor are they provided by scanning the QR code that takes individuals to the payment portal. *Id*. at ¶ 7, 9–10. Accordingly, the full terms and conditions, which includes the delegation clause contained within the arbitration terms that delegates questions of arbitrability to the arbitrator, are designed to be inaccessible to those whom they purport to bind.

The other factors courts use in weighing procedural unconscionability likewise fall in Plaintiff's favor. The sign is clearly standardized and presented to potential parkers on a take-it or leave-it basis, and those hoping to use the parking facilities provided by Defendant are certainly unable to bargain for better terms in the moment of needing a place to park. As stated above, the sign is not posted in a manner that lends itself to being read thoroughly before parking because it is posted above the heads of those entering the facility in a position that makes it unsafe to pause to thoroughly read the terms before entering. The sign is procedurally inadequate to notify individuals of the arbitration terms and any resulting contract is unconscionable and unenforceable.

3. <u>The arbitration terms are substantively unconscionable.</u>

The arbitration terms are so unreasonable, one-sided, and heavily favorable to Defendant that they are substantively unconscionable. As outlined in Plaintiff's Complaint, Defendant's business model relies on obfuscation and unclarity in hopes that it can turn minor parking infractions into high-dollar, illegal fines. On information and belief, most of Defendant's profit margin is predicated on extracting these fines rather than low-dollar hourly parking rates. To accomplish this goal and raise profits, Defendant removes all barriers for entry to its parking garages and makes the only mechanism for payment a QR code scan. While these "pay here" QR code signs are hung throughout the East 3rd Street garage, the only sign that warns individuals that they are waiving their right to a trial by jury is placed remotely in a manner not calculated to be seen by vehicles entering the garage.[2]

Defendant provides no grace period or warning for parking infractions; vehicles that remain mere minutes past their last hourly payment are slapped with exorbitant fines. *See* Compl. ¶ 22, ECF No. 1. Moreover, Defendant's "cutting-edge" scan-and-pay portal does not provide notice that parking time is nearly expired, and when individuals pay for additional time before the original payment is completely expired, Defendant fails to account for the minutes of time that were not used up on the original payment. For example, on April 26 Plaintiff paid for two hours of parking time, from 8:01 pm to 12:01 am. Compl. ¶ 22. At 11:57, four minutes prior to the time her parking expired, Plaintiff paid for an additional two hours, ending in 1:57 am. *Id*. Plaintiff exited the garage at 2:01 am, which is exactly four hours after she entered the garage, but still received a fine for overstaying even though she paid for four hours of parking. *Id*.

---

[2] That an identical sign is hung on the reverse side of the post is irrelevant. Not only is this sign also positioned such that it cannot be easily read from within a vehicle, it can only be seen when a vehicle is exiting the garage, meaning it would not be seen until after the individual had parked, paid, and was exiting the garage. Defendant cannot create a post-hoc contract binding individuals for actions they had already performed.

11

Defendant continues these predatory and unconscionable business practices by seeking to force individuals who object to these practices into costly arbitration in which they cannot mitigate their costs through collective action. To the extent that Defendant may argue that mandated arbitration is standard practice for parking services, it is worth noting that these types of scan-and-pay parking garages are a relatively recent development and much of the case law surrounding the practice has been developed in lawsuits against Defendant and other, similarly predatory businesses. It is only standard practice in the industry because Defendant itself made it so, and there was no other reason for any individual parking in a parking garage to believe he or she was waiving the right to a trial by jury simply by parking within, particularly with so little notice of the terms as described above.

Accordingly, the arbitration terms, including the delegation clause, contained within Defendant's terms and conditions are both procedurally and substantively unconscionable. The Court should determine the delegation clause invalid and decline to compel arbitration.

## IV. CONCLUSION

The Court cannot compel arbitration in this case because Plaintiff did not agree to be bound by the terms. Defendant failed to put individuals entering the East 3rd Street garage on notice of the arbitration terms because the posted sign containing those terms is poorly placed and illegible from the vantage point from which potential parkers would be expected to view it. Regardless, the arbitration terms itself, including the delegation clause, are procedurally and substantively unconscionable and cannot be enforced. Defendant's Motion to Compel must be denied.

Date: 08/14/2025,                                   Respectfully submitted,

                                                                             **SANFORD LAW FIRM, PLLC**

                                                                             Josh Sanford
Col. Bar No. 44358
josh@sanfordlawfirm.com
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Phone: (501) 221-0088
Fax: (888) 787-2040


Date: 08/14/2025,                                   Respectfully submitted,

**SANFORD LAW FIRM, PLLC**

Josh Sanford
Col. Bar No. 44358
josh@sanfordlawfirm.com
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Phone: (501) 221-0088
Fax: (888) 787-2040