# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01771-GPG-NRN

BRIAN BRANT, BROOKE FITZ, ROBERT CALDWELL, AND MAYENSSI MONTIEL,
individually, and on behalf of all others similarly situated,

 *Plaintiffs*,

v.

PARKING REVENUE RECOVERY SERVICES, INC.,

 *Defendant*.

---

## DEFENDANT PARKING REVENUE RECOVERY SERVICES, INC.'S MOTION TO COMPEL ARBITRATION

---

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II.  L.R. 7.1 – CERTIFICATE OF CONFERRAL ..................................................................... 2

III.  FACTUAL BACKGROUND ............................................................................................. 2

IV.  LEGAL STANDARD ....................................................................................................... 5

V.  ARGUMENT .................................................................................................................. 7

    A.  Plaintiffs Agreed to Arbitrate the Dispute. .............................................................. 8

    B.  Plaintiffs Will Not be Able to Establish That any Statute or Policy Renders
       the Claim Non-Arbitrable. ....................................................................................... 14

VI.  CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*
   513 U.S. 265 (1995)............................................................................... 6

*Altice USA, Inc. v. Johnson*
   2023 Ark. App. 120, 661 S.W.3d 707 (2023)................................. 6, 8, 9

*AT&T Mobility LL. v. Concepcion*
   563 U.S. 333 (2011)....................................................................... 5, 6, 14

*Beattie v. TTEC Healthcare Sols., Inc.*
   No. 1:18-CV-01574-RM-SKC, 2019 WL 2189481 (D. Colo. May 21, 2019)........................ 11

*Bernal v. Burnett*
   793 F. Supp. 2d 1280 (D. Colo. 2011)............................................. 14, 15

*Butler, et al. v.Asura Technologies USA, Inc., et al.*
   24-cv-529, Dkt. 33 (D. Colo)..................................................... 1, 8, 10, 12

*Childs v. Adams*
   322 Ark. 424, 909 S.W.2d 641 (1995)................................................... 8

*Condor Energy Tech., LLC v. Baker Hughes Oilfield Operations, Inc.*
   16-CV-1912-WJM-CBS, 2016 WL 11744214 (D. Colo. Nov. 29, 2016)...................... 8, 9, 10

*Constructive Hands, Inc. v. Baker*
   446 F. Supp. 2d 88 (N.D.N.Y. 2006)................................................... 12

*Dean Witter Reynolds v. Byrd*
   470 U.S. 213 (1985)............................................................................... 6

*DeVere v. Gila Corp.*
   2008 WL 11333891 (W.D. Tex. Nov. 17, 2008)................................... 9

*Dougan v. Children's Place, Inc.*
   C20-0818JLR, 2020 WL 6286812 (W.D. Wash. Oct. 27, 2020) ............. 12

*E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.*
   252 P.3d 36 (Colo. App. 2010)............................................................. 9

*Franklin v. Parking Revenue Recovery Servs., Inc.*
   832 F.3d 741, (7th Cir. 2016) ............................................................. 9

*Grosvenor v. Qwest Commc'ns Int'l, Inc.*
   2010 WL 3906253 (D. Colo. Sept 30, 2010)...................................... 7

*Hansen v. Ticket Track, Inc.*
   280 F. Supp. 2d 1196 (W.D. Wash. 2003).......................................... 9

*Howard v. Ferrellgas Partners, L.P.*
   748 F.3d 975 (10th Cir. 2014) ........................................................... 7

*J.A. Walker Co., Inc. v. Cambria Corp.*
  159 P.3d 126 (Colo.2007) ................................................................................. 6

*Lasser v. Charter Commc'ns, Inc.*
  2020 WL 1527333 (D. Colo. Mar. 31, 2020) ................................................... 11

*Let's Go Aero, Inc. v. Cequent Performance Prod., Inc.*
  78 F. Supp. 3d 1363 (D. Colo. 2015)................................................................ 13

*Millennium Funding, Inc. v. Priv. Internet Access, Inc.*
  21-CV-01261-NYW-SKC, 2022 WL 7560395 (D. Colo. Oct. 13, 2022) ............... 7, 8

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*
  473 U.S. 614 (1985)........................................................................................... 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
  460 U.S. 1 (1983)............................................................................................ 6, 7 8

*Nardo v. HomeAdvisor, Inc.*
  2022 WL 17547940 (D. Colo. July 27, 2022) ................................................... 11

*O'Connor v. BMW of N. Am., LLC*
  *18-CV-03190-CMA-STV*, 2020 WL 5260416 (D. Colo. July 23, 2020)................... 10

*Petrie v. GoSmith, Inc.*
  360 F. Supp. 3d 1159 (D. Colo. 2019) ............................................................. 12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*
  388 U.S. 395 (1967)............................................................................................ 6

*Smith v. Spizzirri*
  601 U.S. 472 (2024)............................................................................................ 7

*Spain v. Johnson*
  2024 WL 907435 (D. Colo. Jan. 16, 2024)........................................... 10, 14, 15

*Stender v. Cardwell*
  2010 WL 1930260 (D. Colo. May 12, 2010)...................................................... 7

*Tobey v. Ace Parking Mgmt., Inc., et al.*
  24-CV-2932-X, 2025 WL 1919887 (N.D. Tex. July 11, 2025) .......... 1, 8, 12, 13, 14

*Vernon v. Qwest Commc'ns Int'l, Inc.*
  857 F. Supp. 2d 1135 (D. Colo. 2012)............................................................ 6, 7

*Volden v. Innovative Fin. Sys., Inc.*
  2004 WL 5566572 (D.S.D. Sept. 24, 2004)...................................................... 12

*Weller v. HSBC Mortg. Servs., Inc.*
  971 F. Supp. 2d 1072 (D. Colo. 2013)............................................................. 11

*Williams v. Imhoff*
  203 F.3d 758 (10th Cir.2000) ........................................................................... 7

*Willingham v. Omaha Woodmen Life Ins. Soc.*
  2009 WL 2588754 (D. Colo. Aug. 19, 2009) .................................................... 15

**Statutes**

9 U.S.C. § 2 ........................................................................................................................ 6

9 U.S.C. § 3 .................................................................................................................... 2, 7

18 U.S.C. § 2721 ............................................................................................................... 2

C.R.S. § 13-22-206 ............................................................................................................ 9

**Rules**

Fed. R. Civ. P. 56 .............................................................................................................. 7

**Other Authorities**

Colo. Jury Instr., Civil 30:6 ............................................................................................. 8

L.R. 7 ................................................................................................................................ 2

Restatement of the Law, Consumer Contracts § 2 (2024) ................................................ 9

## I.    **INTRODUCTION**

Defendant Parking Revenue Recovery Services, Inc. ("PRRS") by and through its undersigned counsel, respectfully moves to compel Plaintiffs Mayenssi Montiel, Brian Brant, Brook Fritz, Robert Caldwell (collectively "Plaintiffs") to arbitrate the claims raised in their Amended Complaint filed on August 21, 2025. (Dkt. 19, "Complaint.") This case was originally filed by Plaintiff Montiel and PRRS moved to compel arbitration of Plaintiff Montiel's claims on July 17, 2025. (Dkts. 1, 9.) The same day that Plaintiff Montiel's response to PRRS's motion to compel arbitration was due, Plaintiff filed an amended complaint, adding three additional Plaintiffs.[1] (Dkt. 19.) However, the additional Plaintiffs do not salvage this case because they too are bound by an enforceable arbitration agreement. Instead, each named Plaintiff must proceed in individual arbitrations pursuant to the arbitration agreement contained in their valid and enforceable contract governing the conduct alleged in the Complaint. Indeed, Plaintiffs' causes of action and arbitration agreement are nearly identical to the claims and agreements asserted against PRRS in *Butler, et al. v. Asura et* al, Case No. 24-cv-529, Dkt. 33 (D. Colo.) and *Tobey v. Ace Parking Mgmt., Inc*., No. 3:24-CV-2932-X, 2025 WL 1919887, at *1 (N.D. Tex. July 11, 2025), where the district courts properly compelled arbitration and stayed proceedings. *See id*. The same result is required here.

PRRS provides parking compliance services for parking locations in the United States, including in Denver, Colorado and Little Rock, Arkansas, where Plaintiffs parked their vehicles. Plaintiffs admit that they overstayed the time for which they paid to park in violation of the lots' rules, which were posted on numerous signs throughout the lots. Nonetheless, Plaintiffs complain

---

[1] With Plaintiffs' consent, PRRS withdrew its original motion to compel arbitration indicating that it would move to compel arbitration of all four Plaintiffs' claims in a single motion to compel rather than proceeding on separate briefing schedules for sake of efficiency. (Dkt. 22.)

that: (i) PRRS used monitoring technology and issued parking notices to Plaintiffs, purportedly in violation of the Drivers Privacy Protection Act, 18 U.S.C. § 2721 *et seq* ("DPPA"); and (ii) did not post its fines for violating the parking facility rules, purportedly in violation of the Colorado Consumer Protection Act ("CCPA") and Arkansas Deceptive Trade Practices Act ("ADTPA.") (Compl. ¶¶ 15-17, 47-212.[2]) But Plaintiffs (and the members of the putative class they seek to represent), agreed to arbitrate, and not litigate, their claims.

Indeed, on the day Plaintiffs elected to leave their cars in the private pay-lots at-issue in downtown Denver and Little Rock, there were multiple red signs posted in the lots, which clearly indicate "By parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration." (Declaration of Todd Tucker hereinafter "Tucker Decl." Exs. 1-3, 5-7; *see also id.* Ex. 4 (similar).) Based on the written agreement to arbitrate and Plaintiffs' assent to its terms by using the parking facilities, the Federal Arbitration Act requires that the Court "shall . . . stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3.

## II.    **L.R. 7.1 – CERTIFICATE OF CONFERRAL**

Undersigned counsel certifies that she conferred with Plaintiffs' counsel, Josh Sanford, via telephone conference on July 17, and via email on numerous occasions in July through September, 2025, regarding this Motion. Plaintiffs' counsel indicated that Plaintiffs oppose this Motion.

## III.    **FACTUAL BACKGROUND**

PRRS provides cutting-edge parking compliance monitoring solutions and efficiently monitors parking lots without gates or barriers throughout the United States. (Compl. ¶¶ 1, 2.)[3] In

---

[2] The Complaint does not contain paragraph allegations numbered 57-205 and skips from 57 to 206.
[3] Allegations in Plaintiff's Complaint are assumed to be true solely for the purposes of this Motion and PRRS reserves the right to contest all allegations set forth in the Complaint at later stages of this litigation.

Little Rock, Arkansas, PRRS conducts parking compliance monitoring for the parking facility located at 400 East 3rd Street (the "3rd Street Facility"). (*See id.* ¶ 8.) In Denver, Colorado, PRRS conducts parking compliance monitoring for the parking facilities located at 1401 Market Street (the "1401 Market Facility"), 1385 Larimer Street (the "Larimer Facility") and 3350 Brighton Boulevard (the "Brighton Facility") (*See id.* ¶ 15; Dkt. 19-4.)

Plaintiff Montiel alleges that on or about April 27, 2025, she parked her car in the 3rd Street Facility, overstayed the time she paid, and that PRRS issued a Notice of Non-Compliance to her on May 1, 2025, which assessed a $70 fee for Expired Permit/Facility Registration. (*Id.* ¶¶ 8, 26; Dkt. 19-5.) Plaintiff Brant alleges that on or about May 28, 2025, he parked his car at the 1401 Market Facility, overstayed the time he paid, and that PRRS issued a Notice of Non-Compliance to him on June 1, 2025, which assessed a $70 fee for Expired Permit/Facility Registration. (Compl. ¶ 15; Dkt. 19-1.) Plaintiff Fritz alleges that in February 2023, she parked her car at the 1401 Market Facility and received an $82.00 fine[4] and that on May 17, 2025, she received another $55 fee for parking violation at the 1385 Larimer Facility. (Compl. ¶ 24.) Plaintiff Caldwell alleges that on or about May 21, 2025, he parked his car at the Brighton Facility, overstayed the time he paid, and that PRRS issued a Notice of Non-Compliance for $55. (*Id.* ¶ 25; Dkt. 19-4.)

At the time Plaintiffs Montiel and Fritz parked at the 3rd Street and Larimer Street Facilities, they contained numerous red signs which govern the terms of Plaintiffs' use of the parking facilities (the "Contract"):

> **YOU MUST COMPLY WITH ALL SIGNS AT ALL TIMES**
> This is a contract. Read these terms PRIOR to parking. By parking on this Facility, you accept all these terms.
> **NO FREE PARKING AT ANY TIME**

---

[4] Plaintiff Fritz alleges that she paid for three hours of parking, but PRRS records indicate that she only paid for two hours and thus, received a Parking Notice for an expired ticket after remaining in the lot for 2 hours and 46 minutes. (Tucker Decl. ¶ 7.)

> You must pay and/or be validated to use this Facility within the first 10 minutes of entering or you will be an authorized contract parker to enter this facility.
>
> **PARKING COMPLIANCE**
>
> The Facility's rules and use limitations are strictly enforced by Parking Revenue Recovery Services, Inc. This Facility may be monitored by video analytics and/or license plate recognition technology to ensure compliance with the Facility's rules for use. Vehicles failing to comply with the Facility's use rules will be assessed additional fees up to $250.00 per violation to recover costs to manage compliance and to identify violators and may be subject to towing or booting to the extent permitted by law. Unpaid fees assessed by PRRS will be assigned for collection to a debt collector.
>
> **ARBITRATION**
>
> By parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration.
>
> **DATA PRIVACY**
>
> By entering this facility, you agree to PRRS's Privacy Policy and acknowledge that PRRS is collecting and processing your personal information.

(Tucker Decl. ¶¶ 3, 8, Exs. 1-3, 5.) Similarly, when Plaintiff Brant parked at the 1401 Market Facility in 2025 and Plaintiff Caldwell parked at the Brighton Facility, a later iteration of the red Contract was posted, which contained the exact same arbitration provision. (Tucker Decl. ¶¶ 9, 11, Exs. 6, 7.) Finally, when Plaintiff Fritz parked at the 1401 Market Facility in 2023, an earlier iteration of the Contract was posted on red signs, which contained substantially the same arbitration provision:

> **NO FREE PARKING AT ANY TIME**
>
> You must pay for parking within the 10 minutes of entering this Lot.
>
> **PARKING COMPLIANCE**
>
> The Lot's rules and use limitations are strictly enforced by Parking Revenue Recovery Services, Inc. This Lot may be monitored by License Plate Recognition technology to ensure compliance with the rules. Vehicles failing to comply with the Lot rules will be charged additional parking fees up to $150.00 and may be subject to towing or booting to the extent permitted by law. Unpaid fees assessed by PRRS will be assigned for collection to a debt collector.
>
> **ARBITRATION**

> By parking on this Lot, you hereby agree that the sole remedy for an unresolved dispute is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration.

(Tucker Decl. Ex. ¶ 7, Ex. 4.) At all relevant times, the Contract was conspicuously posted on red signs throughout the parking facilities used by Plaintiffs, including at least at the entrance and exit to the lots. (*See id.* ¶¶ 3-5, 7-11, Exs. 1-7) Plaintiffs fail to acknowledge the existence of this agreement to arbitrate disputes regarding their use of the parking facilities. Plaintiffs' three claims in this action arise from PRRS's (i) purported use of Plaintiffs' personal information, which PRRS obtained due to Plaintiffs' failure to make sufficient payment at the parking facilities, and (ii) assessment of a fine in connection with the same. (*See* Compl. ¶¶ 50-51, 210, 222.)

Plaintiffs Brant and Caldwell initiated disputes regarding their use of the parking facilities and agreed to an additional arbitration provision, which states:

> Arbitration. In the event the parties are not able to resolve any dispute between them arising out of or concerning the Contract Terms and these Terms, whether in contract, tort, or otherwise at law or in equity for damages or any other relief, then the parties agree that such dispute shall be resolved only by final and binding arbitration pursuant to the Federal Arbitration Act, conducted by a single neutral arbitrator and administered by an arbitration service selected by the parties, in a location mutually agreed upon by the parties. The arbitrator's award shall be final, and judgment may be entered upon it in any court having jurisdiction. If any legal or equitable action, proceeding, or arbitration arises out of or concerns the Contract Terms and these Terms, the prevailing party shall be entitled to recover its costs and reasonable attorney's fees. The parties agree that the Federal Arbitration Act governs the interpretation and enforcement of this provision. The entire dispute, including the scope and enforceability of this arbitration provision shall be determined by the arbitrator. This arbitration provision shall survive the termination of the Contract Terms and these Terms.

(Tucker Decl. ¶¶ 10, 12.)

## IV.    **LEGAL STANDARD**

Congress enacted the Federal Arbitration Act ("FAA") "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LL. v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA reflects both a "liberal policy favoring arbitration," and the "fundamental principal that

arbitration is a matter of contract." *Id.* The FAA applies to any "contract evidencing a transaction involving commerce," and the phrase "involving commerce" is interpreted broadly to apply to any contract "affecting commerce." *See, e.g., Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 276-77 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 (1967). Accordingly, it covers the Contract and each Plaintiffs' use of the pertinent parking facilities.

The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). With the FAA, Congress sought to guarantee the enforcement of arbitration agreements and to prevent the parties thereto from avoiding their contractual obligations to arbitrate. *Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 219-220 (1985). To that end, the FAA provides that any arbitration agreement within its scope "**shall be valid, irrevocable, and enforceable[.]**"9 U.S.C. § 2 (emphasis added); *AT&T Mobility,* 563 U.S. at 344 ("The overarching purpose of the FAA, evident in the text of the §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."); *see also Vernon v. Qwest Commc'ns Int'l, Inc.,* 857 F. Supp. 2d 1135, 1142 (D. Colo. 2012) ("The 'liberal federal policy favoring arbitration' is well-recognized.")

"As arbitration typically is a matter of contract… in deciding whether there is an enforceable agreement to arbitrate, 'courts generally ... should apply ordinary state-law principles that govern the formation of contracts.'" *Id.* However, the court's application of state law principles must also give "due regard ... to the federal policy favoring arbitration." *Id.*; *see also J.A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 128 (Colo.2007) ("Colorado law favors the resolution of disputes through arbitration."); *Altice USA, Inc. v. Johnson,* 2023 Ark. App. 120, 6, 661 S.W.3d 707, 714 (2023) ("Arkansas strongly favors arbitration as a matter of public policy as

a less expensive and more expeditious means of settling litigation and relieving docket congestion."). When claims are subject to an enforceable arbitration agreement, the Court has no discretion but to stay the proceedings pending resolution of the arbitration. *See, e.g.*, 9 U.S.C. § 3 (requiring a stay pending arbitration); *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) ("That plain statutory text requires a court to stay the proceeding" pending arbitration).

The decision whether to compel arbitration involves a two-step inquiry; the Court must determine: (1) whether the parties agreed to arbitrate the dispute; and (2) whether any statute or policy renders the claims non-arbitrable. *Stender v. Cardwell,* 2010 WL 1930260, at *5 (D. Colo. May 12, 2010) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 626 (1985); *Williams v. Imhoff,* 203 F.3d 758, 764 (10th Cir.2000)). The party seeking to compel arbitration, must come forward with "evidence sufficient to demonstrate an enforceable arbitration agreement." *Vernon,* 857 F. Supp. 2d 1135, 1148 (internal citations omitted). The burden then shifts to the Plaintiffs "to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.* (citing *Grosvenor v. Qwest Commc'ns Int'l, Inc.*, 2010 WL 3906253, at *5 (D. Colo. Sept 30, 2010)).[5]

## V.    **ARGUMENT**

In accordance with the FAA, Colorado and Arkansas law,[6] the arbitration clause in the Contract is valid and enforceable and encompasses Plaintiffs' three causes of action asserted in this case. Accordingly, Plaintiffs should be compelled to participate in arbitration of their claims.

---

[5] PRRS asserts that there is no dispute regarding the arbitrability of Plaintiff's claim; however, if the court deems that some factual issues need to be resolved, the correct approach is to hold a factual hearing on those issues pursuant to the FAA. *Howard v. Ferrellgas Partners, L.P.,* 748 F.3d 975, 978 (10th Cir. 2014) (citing *Moses H. Cone Mem'l Hosp.,* 460 U.S. 1 at, 22).

[6] Under choice-of-law principles, courts typically apply the law of the state with the "most significant relationship" to the contract. *See Millennium Funding, Inc. v. Priv. Internet Access, Inc.*, No. 21-CV-01261-NYW-SKC, 2022 WL 7560395, at *21 (D. Colo. Oct. 13, 2022). Here, the Montiel contract was entered into by Plaintiff Montiel in Arkansas with a Colorado company and the Fritz, Brant, and Caldwell contracts were entered into by Plaintiffs in Colorado with a Colorado company. However, the court need not choose which body of law to apply unless there is some outcome

Indeed, this case is analogous to *Butler, et al. v. Asura, et al.*, Case No. 24-cv-529 (D. Colo.) and *Tobey v. Ace Parking Management, Inc. et al*, 2025 WL 1919887 (N.D. Tex. July 11, 2025), where the courts entered orders compelling arbitration of similar claims asserted against PRRS. *Butler,* Dkt. 33; *Tobey*, 2025 WL 1919887. In so ordering, the *Butler* court observed:

> At first blush, it may seem counterintuitive or surprising that one can be bound to the terms of a contract by parking in a parking lot. But a bit of consideration reveals that such contracts are, in fact, not unusual at all. The fundamental exchange of promises at the heart of any implied parking contract is fairly obvious: you allow me to park my car on your property, and I agree to pay you for this privilege, or else risk towing or ticketing. This exchange, on its own, is sufficient to meet the basic criteria necessary to establish formation of a contract.

(Dkt. 33, p. 2.) The court held that the contract, which is substantially the same and in most instances, identical to the Contracts at issue here, contained a valid and enforceable arbitration agreement. (*Id.* at 5-8.) Therefore, the Court entered an order compelling arbitration. The same result is required here.

### A. Plaintiffs Agreed to Arbitrate the Dispute.

Under Colorado and Arkansas law, a contract is formed when an offer to form a contract is proffered and accepted, with an exchange of consideration. Colo. Jury Instr., Civil 30:6; Ark. Model Jury Instr., Civil AMI 2402. "[A] party's manifestation of assent to a contract may be made wholly by spoken words or by conduct." *Condor Energy Tech., LLC v. Baker Hughes Oilfield Operations, Inc.,* No. 16-CV-1912-WJM-CBS, 2016 WL 11744214, at *5 (D. Colo. Nov. 29, 2016) (collecting cases applying Colorado law and holding that "communications and conduct manifested an objective intent to accept" terms, including arbitration provision); *see also Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120, 8, 661 S.W.3d 707, 715 (2023) (citing *Childs v. Adams*, 322 Ark. 424, 433, 909 S.W.2d 641, 645 (1995)).

---

determinative conflict between the potentially applicable bodies of law. *Id.* (internal citation omitted). Here, PRRS has not identified any outcome determinative conflicts between Arkansas and Colorado law.

Pertinently, "common law contract principles allow for the formation of contracts without the signatures of parties bound by them." *E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.,* 252 P.3d 36, 39 (Colo. App. 2010); *see also Altice USA, Inc.,* 2023 Ark. App. 120, 12 (rejecting argument that lack of signature rendered arbitration provision unenforceable). Moreover, neither Arkansas nor Colorado law imposes additional stringent enforceability requirements on agreements to arbitrate above those requirements applying to the formation of contracts generally. *See* C.R.S. § 13-22-206; A.R.C. § 16-108-206. Accordingly, parties may enter into an enforceable agreement to arbitrate by course of conduct, notwithstanding the absence of specific negotiations between the parties, and absent the parties' signatures. *See E-21 Eng'g, Inc.,* 252 P.3d at 39; *Condor Energy Tech., LLC,* 2016 WL 11744214, at *5; *Altice USA, Inc.,* 2023 Ark. App. 120, 12.

> That Plaintiffs formed an enforceable agreement through their conduct is black letter law:
>
> A consumer parks a car in a private parking lot. A prominent sign at the entrance to the lot states that a $10-per-hour charge will be collected upon exit from the lot and that the business is not responsible for damage to the vehicle while parked in the lot. By entering the lot, the consumer manifests assent to the transaction concerning the use of the parking lot, and the terms posted on the sign are adopted under subsection (a).

Restatement of the Law, Consumer Contracts § 2 (2024); *see also, e.g., Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1202 (W.D. Wash. 2003) (holding that obligation to pay parking fees and associated late fees arose out of contract between the lot and the parker); *DeVere v. Gila Corp*., 2008 WL 11333891, at *3 (W.D. Tex. Nov. 17, 2008) (discussing implied contract between lot and parker); *Franklin v. Parking Revenue Recovery Servs., Inc*., 832 F.3d 741, (7th Cir. 2016) (holding customers "accepted this offer—and thus formed a contract—when they parked in the lot.") Just last fall this Court enforced an arbitration agreement in favor of PRRS based on the same large, red sign posted on the lot. The Court reasoned that "large red signs at the entrance to the parking lots put Plaintiffs on notice that something important was being conveyed to them.

Such information, as explained above, frequently involves contractual limits and requirements." *Butler,* No. 1:24-CV-00529, Dkt. 33. at 5. Consequently, the *Butler* court compelled plaintiffs to arbitrate their claims against PRRS pursuant to the arbitration agreement. *Id.* at 10.

Here, Plaintiffs fail to acknowledge the existence of the arbitration clause contained on the signs in the parking facilities. *See* Compl. *generally.* However, the signs, posted on a contrasting red background at the parking locations used by Plaintiffs, notified Plaintiffs under a capitalized, boldface "ARBITRATION" heading stating: "By parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration." (Tucker Decl. Ex 1, 5-6, 7.)[7]

Plaintiffs accepted that offer, an offer which explicitly included the arbitration clause, by electing to park their vehicle at the parking facilities. (*See* Compl. ¶¶ 23-26.) Therefore, PRRS has demonstrated that Plaintiffs manifested assent to the arbitration provision through their decision to park in the facilities. *Spain v. Johnson,* 2024 WL 907435, at *3 (D. Colo. Jan. 16, 2024) (plaintiff manifested assent to arbitration provision through choosing to use the Lyft app); *Condor Energy Tech., LLC,* 2016 WL 11744214, at *5 (receipt of terms containing arbitration provision and continued performance without objection to them manifested intent to accept terms); *see also O'Connor v. BMW of N. Am., LLC,* No. 18-CV-03190-CMA-STV, 2020 WL 5260416, at *2 (D. Colo. July 23, 2020) (granting motion to compel arbitration when defendant presented sufficient evidence of the existence of an agreement to arbitrate).

Plaintiffs will not be able to demonstrate any genuine issue of material fact as to the Contract in opposing PRRS's motion. The totality of the circumstances in this case indicate that

---

[7] The earlier 2023 iteration of the contract is nearly identical: *See* Tucker Ex. 4: "ARBITRATION By parking on this Lot, you hereby agree that the sole remedy for an unresolved dispute is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration."

Plaintiffs had reasonable notice of the Contract and the arbitration clause therein. PRRS has submitted sworn testimony and photographs demonstrating that the Contract was posted at numerous locations in the parking facilities used by Plaintiffs. (Tucker Decl. ¶¶ 3-11, Exs. 1-7.) In addition, the evidence demonstrates that the Contract was posted in the relevant parking lots *prior* to Plaintiffs' use of the parking lots. *See id.*[8] The conspicuous signs in the parking lots that Plaintiffs elected to use put Plaintiffs on notice of the terms and conditions of their use of the parking lot, including the agreement to arbitrate. Plaintiffs only needed to read the signs to be informed of their agreement to arbitrate. *See Lasser v. Charter Commc'ns, Inc.,* 2020 WL 1527333, at *3 (D. Colo. Mar. 31, 2020) (granting motion to compel arbitration observing that "Plaintiff only needed to read the email to be informed of the arbitration agreement.")

Regardless, Plaintiffs' failure to read the Contract language on the signs would not allow them to escape their agreement to arbitrate. *See Nardo v. HomeAdvisor, Inc.,* 2022 WL 17547940, at *5 (D. Colo. July 27, 2022) (plaintiff manifested assent to the terms and conditions, which included the arbitration agreement, "even though Plaintiff never actually clicked the hyperlink to view HomeAdvisor's Terms and Conditions"), *report and recommendation adopted,* 2022 WL 17547938 (D. Colo. Aug. 11, 2022); *see also Weller v. HSBC Mortg. Servs., Inc.,* 971 F. Supp. 2d 1072, 1080 (D. Colo. 2013) ("A party generally cannot avoid contractual obligations by claiming that he or she did not read the agreement.") (internal citation omitted). Plaintiffs plainly assented to the Contract in deciding to park in the facilities and cannot establish a genuine issue of material

---

[8] Any argument by Plaintiff in response that she does not recall seeing the signs or agreeing to arbitrate is insufficient to defeat arbitration. *Beattie v. TTEC Healthcare Sols., Inc.,* No. 1:18-CV-01574-RM-SKC, 2019 WL 2189481, at *2 (D. Colo. May 21, 2019) (holding that the following statements "do not raise a genuine dispute of material fact regarding the existence of an agreement to arbitrate": Plaintiffs declare that they: (i) "do not recall signing or assenting to" the arbitration agreement; (ii) "would very likely remember reading or signing such a document" and "strongly believe [they] did not sign or assent to such a document." and (iii)"If I did sign an arbitration agreement, I did not do so knowingly or voluntarily; nor was I allowed to consult with an attorney before signing such agreement.").

fact regarding the existence of the agreement to arbitrate. *Petrie v. GoSmith, Inc.,* 360 F. Supp. 3d 1159, 1163 (D. Colo. 2019) (plaintiff failed to introduce evidence refuting his assent to the arbitration clause).

*Dougan v. Children's Place, Inc.,* is instructive. No. C20-0818JLR, 2020 WL 6286812, at *4 (W.D. Wash. Oct. 27, 2020). In *Dougan,* the court held that physical signs in defendant's retail store regarding the My Place Rewards ("MPR") program put plaintiff on notice of the terms and conditions governing the MPR program. *Id.* The court observed that she was on constructive notice of those terms and conditions, and "[h]ad she inquired further, she would have discovered that those terms and conditions included an agreement to submit any disputes about the MPR Program to arbitration." *Id.* The *Dougan* court is not alone in recognizing that signs, including PRRS signs specifically, sufficiently put parties on notice regarding contract provisions. *See, e.g., Tobey,* 2025 WL 1919887, at *3 (holding that plaintiff had reasonable notice of the arbitration terms on PRRS's conspicuous red signs); *Volden v. Innovative Fin. Sys., Inc.,* 2004 WL 5566572, at *2 (D.S.D. Sept. 24, 2004) (conspicuous signs posted at McDonalds constituted agreement to collection fee if checks bounced), *aff'd*, 440 F.3d 947 (8th Cir. 2006); *see also Constructive Hands, Inc. v. Baker,* 446 F. Supp. 2d 88, 96 (N.D.N.Y. 2006) (finding that plaintiff established interest rate of 1.5% based on "invoices, business practice, and a sign posted at Plaintiff's place of business"). Here too, Plaintiffs were plainly on notice that their decision to park in parking facilities resulted in their agreement "that the sole remedy for all unresolved disputes is binding arbitration[.]" (Tucker Decl. Ex. 1.) Therefore, the evidence demonstrates the existence of an agreement to arbitrate.

As noted above, this Court in *Butler, et al. v. Asura, et al.*, Case No. 24-cv-529 (D. Colo.) reached the exact same conclusion. (*Id.* Dkt. 33, p. 2.) In that case, the plaintiffs asserted a single DPPA claim against PRRS based on its provision of parking compliance services for parking

facilities in Avon, Colorado. (*Id.* at 1.) The signs in the Avon, Colorado parking lots contained the exact same arbitration provision as the signs in this case (with the exception of minor differences in word choice on one sign)[9] stating "[b]y parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration." (*Id.* at 3.) The Court determined that "Plaintiffs assented to an arbitration provision that was posted conspicuously throughout the lots in which Plaintiffs parked" and compelled arbitration. (*Id.* at 1.) The same result is required here. Plaintiffs' Claims Are Within the Scope of the Arbitration Agreement.

Plaintiffs' claims in this action relate to PRRS's purported use of their personal information to generate and send a parking notice and issue a parking fee to Plaintiffs based on their use of the parking facilities. (*See* Compl.) "The language of the contract defines the scope of disputes subject to arbitration." *Let's Go Aero, Inc. v. Cequent Performance Prod., Inc.,* 78 F. Supp. 3d 1363, 1372 (D. Colo. 2015) (internal citation omitted). "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (internal citation omitted).

Here, the Contract contains a broad dispute resolution scope, expressly stating: "By parking on this Facility, you hereby agree that the sole remedy *for all unresolved disputes* is binding arbitration[.]" (Tucker Decl. Ex. 1 (emphasis added).; *see also id.* Ex. 4 (" By parking on this Lot, you hereby agree that the sole remedy for an unresolved dispute is binding arbitration[.]")) In addition, the Contract provides: (i) "[b]y entering this Facility, you agree to PRRS's Privacy Policy and acknowledge that PRRS is collecting and processing your personal information" and (ii) "Vehicles failing to comply with the Facility's use rules will be assessed additional fees up to

---

[9] The *Tobey* court reached the exact same conclusion in addressing both versions of PRRS's signs at-issue in this case. The minor difference in word choice ("an" versus "any") is of no consequence, however, because as the *Tobey* court held: "an" refers to "any" and "is substantively the same as 'all.'" *Tobey*, 2025 WL 1919887, at n. 15.

$250.00 per violation." (*Id.*) Plaintiffs' DPPA, CCPA and ADTPA claims based on their use of the parking facilities and PRRS's purported use of their personal information to issue a parking notice and assess fines to Plaintiffs falls squarely within the Contract's scope and therefore, the arbitration provision "for *all* unresolved disputes" applies. (Tucker Decl. Ex. 1 (emphasis added).)

### B. Plaintiffs Will Not be Able to Establish That any Statute or Policy Renders the Claim Non-Arbitrable.

Plaintiffs will not be able to establish that any statute or policy renders their claims non-arbitrable. *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 346 (2011). In *Concepcion,* the Supreme Court held that a state may not apply its own law on contract interpretation and formation—including unconscionability—in a manner that interferes with the FAA's presumption in favor of arbitration. *Id.* at 344. In so holding, the Court struck down California's *Discover Bank* rule, which held that waivers of class proceedings in a consumer contract of adhesion are unconscionable and should not be enforced. *Id.* at 346-47. As this Court has recognized, "[i]n *Concepcion,* the Supreme Court rejected the idea that arbitration agreements are *per se* unconscionable when found in adhesion contracts." *Bernal v. Burnett,* 793 F. Supp. 2d 1280, 1286 (D. Colo. 2011). Accordingly, Plaintiffs cannot invoke state law regarding the adhesive nature of the contracts at issue here to argue that the arbitration clause is unconscionable. *See id.* (rejecting plaintiffs' argument that the arbitration clause was unconscionable because of the "adhesive nature of the contracts at issue" (*i.e.,* "standardized forms, lack of ability to negotiate, power disadvantage, etc.")); *see also Tobey,* 2025 WL 1919887, at *3 (rejecting plaintiff's argument that the arbitration provision on PRRS's sign is unconscionable).

Here too, Plaintiffs will not be able to establish that the arbitration provision at-issue is unconscionable. The use of arbitration is "common and not unreasonable" and "in fact is encouraged by Congress." *Spain,* 2024 WL 907435, at *3-4 (holding that Lyft's standardized terms

of service form including arbitration provision was not unconscionable). The evidence demonstrates that PRRS's Contract was readily available to drivers upon entering the parking facilities. (Tucker Decl. ¶¶ 3-11, Exs. 1-7.) Moreover, Plaintiffs do not argue that they had no other parking options and were forced to park in the pertinent parking facilities and accept the Contract terms. Nor could they. Therefore, the circumstances simply do not "support the idea that this provision was snuck in or forced upon an unsuspecting or unsophisticated consumer with no other options." *Spain,* 2024 WL 907435, at *3.

Finally, Plaintiffs will be unable to establish that ordering the parties to arbitration would impact Plaintiffs' ability to recover. In their Complaint, Plaintiffs assert, inter alia, statutory damages of $2,500 and attorneys' fees under the DPPA. *See* Compl. ¶ 57. Such damages are significantly larger than individual damages in many consumer class actions and thus "this case seems more likely than many others to be able to proceed via individual arbitration." *Bernal,* 793 F. Supp. 2d at 1288. Under such circumstances, Plaintiffs cannot persuade the Court that ordering arbitration would impact Plaintiffs' ability to recover. *Id.; see also Willingham v. Omaha Woodmen Life Ins. Soc.,* 2009 WL 2588754, at *1 (D. Colo. Aug. 19, 2009) (granting motion to compel arbitration when plaintiff failed to cite authority suggesting arbitration would deprive him of the remedies requested in the complaint and the plaintiff "raise[d] no other arguments that the claims" are not arbitrable). Here too, this Court should compel arbitration of Plaintiffs' claims because Plaintiffs cannot establish that statute or policy renders the claim non-arbitrable.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, PRRS respectfully requests that this Court grant its Motion to Compel Arbitration.

DATED this 17th day of September, 2025.

Respectfully submitted,

*/s/ Kelsey C. Boehm*
Kelsey C. Boehm
FOLEY & LARDNER LLP
1144 15th Street, Suite 2200
Denver, Colorado 80202
Phone: 720.437.2013
kboehm@foley.com

Michael D. Leffel
FOLEY & LARDNER LLP
150 E Gilman St, Suite 5000,
Madison, WI 53703-1482
Phone: 608.258.4216
mleffel@foley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of September, 2025 I caused the foregoing **MOTION TO COMPEL ARBITRATION** to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record for all parties.

*/s/ Kelsey C. Boehm*