# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01771-GPG-NRN

BRIAN BRANT, BROOKE FITZ, ROBERT CALDWELL, AND MAYENSSI MONTIEL, individually, and on behalf of all others similarly situated,

    *Plaintiffs*,

v.

PARKING REVENUE RECOVERY SERVICES, INC.,

    *Defendant*.

---

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION (DKT. 28)

---

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................................. 1

I.  Plaintiffs' Challenge to the Contract as a Whole Must be Resolved by the
    Arbitrator Rather Than the Court. ....................................................................................... 1

II. Plaintiffs' Position Regarding Lack of Notice of the Contract Contradicts the
    Photographic Evidence and Lacks Credibility. .................................................................... 2

III. Plaintiffs Cannot Meet Their Burden of Showing Unconscionability. ............................... 7

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advantedge Bus. Grp. v. Meridian Benefit, Inc.*,
  2006 WL 5349269 (D. Colo. Aug. 28, 2006) .................................................................... 1

*Axis Venture Grp., LLC v. 1111 Tower, LLC*,
  2010 WL 1278306 (D. Colo. Mar. 30, 2010) .................................................................... 5

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) ........................................................................................................... 2

*Dees v. Hood*,
  No. 24-CV-00848-PAB-NRN, 2024 WL 4876119 (D. Colo. Nov. 25, 2024) .......................... 1

*Erwin-Keith Inc. v. Stewart* ,
  2018 Ark. App. 147, 546 S.W.3d 508 (2018) .................................................................. 6

*Grosvenor v. Qwest Corp.*,
  854 F. Supp. 2d 1021 (D. Colo. 2012) ............................................................................. 6

*In re HomeAdvisor, Inc. Litig.*,
  2019 WL 4463890 (D. Colo. Sept. 17, 2019) ................................................................... 6

*Lasser v. Charter Commc'ns, Inc.*,
  2020 WL 1527333 (D. Colo. Mar. 31, 2020) ................................................................... 5

*Levine v. Vitamin Cottage Nat. Food Markets, Inc.*,
  2021 WL 4439800 (D. Colo. Sept. 27, 2021) ................................................................... 5

*Lillie v. U.S.*,
  953 F.2d 1188 (10th Cir. 1992) ........................................................................................ 2

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) ............................................................................................................... 2

*Nardo v. HomeAdvisor, Inc.*,
  2022 WL 17547940 (D. Colo. July 27, 2022) .................................................................. 7

*Pelletier v. U.S.*,
  2015 WL 4387909 (D. Colo. July 17, 2015) .................................................................... 1

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ............................................................................................................. 2

*Spain v. Johnson*,
  711 F. Supp. 3d 1260 (D. Colo. 2024) ........................................................................... 10

*Tobey v. Ace Parking Mgmt., Inc.*,
  No. 3:24-CV-2932-X, 2025 WL 1919887 (N.D. Tex. July 11, 2025) ......................... 8, 10

*Upton v. Tribilcock*,
  91 U.S. 45 (1875) ............................................................................................................... 7

*Weller v. HSBC Mortg. Servs., Inc.*,
    971 F. Supp. 2d 1072 (D. Colo. 2013) .......................................................................................... 7

*Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    13 F.3d 330 (10th Cir. 1993) ......................................................................................... 9

**Rules**

Fed. R. Civ. Pr. 15(a)(2) ............................................................................................... 1

**Other Authorities**

D.C.COLO.LCivR 15.1 ............................................................................................... 1

In response to Parking Revenue Recovery Services, Inc.'s ("PRRS") Motion to Compel Arbitration ("Motion"), Plaintiffs Brian Brant, Brooke Fritz, Robert Caldwell, and Mayenssi Montiel (collectively "Plaintiffs") raise two main arguments: (1) that despite the clear red signage containing the arbitration provision in multiple locations throughout the relevant parking lots, Plaintiffs did not have notice of the Contract[1] terms; and (2) despite voluntarily choosing to park in the parking lots and the strong federal public policy favoring arbitration in consumer contracts, the arbitration agreement is somehow "unconscionable." (Dkt. 30, "Response" or Resp.") Neither of these arguments has any merit and, even if the Court accepts Plaintiffs' overlong response,[2] Plaintiffs should be compelled to arbitrate.

## ARGUMENT

**I.      Plaintiffs' Challenge to the Contract as a Whole Must be Resolved by the Arbitrator Rather Than the Court.**

Plaintiffs assert that they are not bound by the Contract because they did not see any of the prominent red signs. (Resp. pp. 2-13.) As discussed in the Motion and *infra* Section II, the signs were conspicuously posted on red background in multiple places throughout the parking facilities used by Plaintiffs. Because Plaintiffs are challenging the proper terms of the Contract, it is "a

---

[1] Unless otherwise indicated, all capitalized terms used herein have the meanings ascribed to them in Defendants' Motion and Plaintiffs' Response.

[2] The Court has discretion to strike the entirety of Plaintiffs' overlong Response, as it spans 19 pages, despite Civil Practice Standard 10.1(c)'s limit to 15 pages for response briefs. *Dees v. Hood*, No. 24-CV-00848-PAB-NRN, 2024 WL 4876119, at *4 (D. Colo. Nov. 25, 2024) (holding that there was no clear error or manifest injustice in this Court's order striking 17-page brief in violation of Civil Practice Standards, limiting brief to 15-pages); *see also Advantedge Bus. Grp. v. Meridian Benefit, Inc.,* 2006 WL 5349269, at *1 (D. Colo. Aug. 28, 2006) (striking overlong motion); *Pelletier v. U.S.*, 2015 WL 4387909, at *12 (D. Colo. July 17, 2015) (denying motion to reconsider order striking overlong brief and observing that "All counsel are expected to be familiar with the practice standards of all judicial officers in this District just as they are expected to be familiar with the Federal Rules of Civil Procedure and this District's Local Rules."), *aff'd*, 653 F. App'x 618 (10th Cir. 2016). This is not Plaintiffs first time submitting non-compliant filings in this case. Specifically, Plaintiffs' Amended Complaint (Dkt. 19) did not comply with D.C.COLO.LCivR 15.1 because it did not include a Notice of Motion and did not attach as an exhibit a copy of the amended pleading, which strikes through the text to be deleted and underlines the text to be added. In addition, Plaintiffs did not seek PRRS's consent or the Court's leave to file the amended pleading as required by Fed. R. Civ. Pr. 15(a)(2). Plaintiffs re-filed the Amended Complaint on August 27, 2025 after counsel for Defendant raised the non-compliant filing with them via email on August 25, 2025. *See* Dkt. 21.

challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, [and therefore] must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). The issue is not for this Court to decide. *Id.* "That is because § 2 [of the FAA] states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). That ends the inquiry, and arbitration should be compelled accordingly.

II.  **Plaintiffs' Position Regarding Lack of Notice of the Contract Contradicts the Photographic Evidence and Lacks Credibility.**

Even if the Court were to consider Plaintiffs' arguments regarding notice (which it should not), they should be summarily rejected because they are unsupported by any credible evidence. In response, Plaintiffs put forth numerous factual assertions in declarations regarding the purported visibility of PRRS's signs in the parking lots that are contradicted by the photographic evidence submitted by PRRS (Dkt. 28-1 through 28-8) and available through Google Street View.[3]

For example, Montiel claims that she could not read the red signs on the left side of the entrance to the 3rd Street Facility when she entered (they were too high), but claims to have been able to read a QR code on the fence to her right when she entered the lot. (Dkt. 30-1 ¶ 13.) However, examining the entrance of the lot on Google Maps demonstrates that the sign on the right-hand side is posted at approximately the same height.[4] Moreover, assuming Montiel's driver's seat is

---

[3] PRRS believes that there are no material disputed facts regarding the arbitrability of Plaintiffs' claim; however, if the Court deems that some factual issues need to be resolved, the correct approach is to permit limited discovery on those issues and to hold a factual hearing on those issues pursuant to the FAA. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983). Moreover, if the Court is inclined, it could conduct a judicial site visit to the Lots to examine the conspicuous Contract signs. *See, e.g., Lillie v. U.S.,* 953 F.2d 1188, 1190 (10th Cir. 1992) (discussing judge's view of scene as evidence since judge is trier of fact).

[4] *See* https://www.google.com/maps/@34.7456578,-92.2672713,3a,15y,28.66h,80.03t/data=!3m7!1e1!3m5!1sHhQ6XEWBB2f16uv0tpgoNA!2e0!6shttps:%2F%2Fstreetviewpixels-pa.googleapis.com%2Fv1%2Fthumbnail%3Fcb_client%3Dmaps_sv.tactile%26w%3D900%26h%3D600%26pitch%

located on the left side of her vehicle, she would have greater visibility of signs viewed out of the left side of her vehicle without obstruction from the roof of her car or right side door. Montiel also claims that "if a driver were to stop to read the terms on entering, half the vehicle would still be in the road." (Dkt. 30-1 ¶ 13.) However, review of photographs of the entrance to the facility plainly demonstrate that that is not the case. *See* Dkt. 28-3, 28-4. In fact, an August 2014 Google Street View image clearly captures a vehicle parked between the present location of the PRRS sign and the road, without any portion of the vehicle in the road.[5] (Of course, a grace period is provided by the lot, so she could have read the sign after parking and left before incurring any obligations. *See* (Dkt. 28-2; Supplemental Declaration of Todd Tucker (hereafter "Supp. Tucker Decl." ¶ 4).)

Similarly, Plaintiff Brant claims to have noticed the yellow and red sign on the right side when he entered the Market Street Facility, but asserts that he did not notice PRRS's larger red sign on the left side (which would be closer to him when he entered the facility). (Dkt. 30-4 ¶¶ 4-6; *see* Dkt. 28-7 p. 6 (images of the signs described).) He also claims that when he entered the lot around 5:45PM on May 28 "it was getting dark and the sign does not appear to be lit" (Dkt. 30-4 ¶ 4) but: (1) the photos attached to the complaint plainly show that it was light when he entered the facility and dark when he exited (Dkt. 19-1);[6] and (2) the photos of the Market Street Facility show that the lot is lined with street lamps. *See* Dkt. 28-7 pp. 2, 4, 7.

---

3D9.965239117709046%26panoid%3DHhQ6XEWBB2f16uv0tpgoNA%26yaw%3D28.659285042720416!7i16384!8i8192?entry=ttu&g_ep=EgoyMDI1MTAxMy4wIKXMDSoASAFQAw%3D%3D
[5] *See* https://www.google.com/maps/@34.7456788,-92.2672873,3a,75y,37h,73.42t/data=!3m8!1e1!3m6!1s4HLsPtz56dkk-2qpoiwHBQ!2e0!5s20140801T000000!6shttps:%2F%2Fstreetviewpixels-pa.googleapis.com%2Fv1%2Fthumbnail%3Fcb_client%3Dmaps_sv.tactile%26w%3D900%26h%3D600%26pitch%3D16.579739190992612%26panoid%3D4HLsPtz56dkk-2qpoiwHBQ%26yaw%3D37.00420518123469!7i13312!8i6656?entry=ttu&g_ep=EgoyMDI1MTAxMy4wIKXMDSoASAFQAw%3D%3D
[6] The sun did not set on May 28, 2025 until 8:16PM. *See* https://www.timeanddate.com/sun/usa/denver?month=5.

3

Next, Plaintiff Caldwell submits a declaration regarding the Brighton Facility, claiming not to have seen the Contract because (i) the signs are at the exit and "far corner of the lot," (ii) are "posted so high that nobody walking under them would be able to read them," and (iii) the stickers posted below the sign are printed in too small of font. (Dkt. 30-5 ¶¶ 5-8.) Contrary to Caldwell's assertion, the sign appearing at Dkt. 28-8, p. 3 is not in the "far corner" but instead appears directly in the middle of the entrance lane of the parking facility. *Compare* Dkt. 28-8, p. 3 *with* Google Street View.[7] With respect to height, the pictures show that they are posted at about 44 to 80 inches high based on comparison to the scooters parked next to them. Moreover, the stickers are right at eye level. Someone with adequate vision to drive would have no problem reading the Contract posted at these locations.

Plaintiff Fritz does not submit a declaration regarding her visits to the 1401 Market Street Facility and Larimer Facility instead relying on attorney argument. (Dkt. 30 p. 9.) Plaintiff Fritz's objections to arbitration should be denied for this reason alone—she offers no evidence regarding her personal experience. Moreover, the argument she relies on is hopelessly inconsistent and plainly contradicted by the photographs submitted by PRRS. For example, Plaintiffs argue that there is no prominent sign at the entrance because it is on a pole "situated on the passenger side of the vehicles entering the lot." (*Id.*) However, this is in direct contradiction to Plaintiffs Montiel and Brant's positions that they noticed the signs appearing on the passenger side, but not driver side, as they entered the 3rd Street and Market Street facilities. (Dkt. 30-1 ¶ 5 ("I noticed a sign

---

[7] Note that the Google Street View capture was taken before the signs were posted in the Brighton Facility. https://www.google.com/maps/@39.7691017,-104.9803266,3a,75y,155.56h,93.03t/data=!3m8!1e1!3m6!1szZVZDi29D525x8rQtCqqYQ!2e0!5s20240501T000000!6shttps:%2F%2Fstreetviewpixels-pa.googleapis.com%2Fv1%2Fthumbnail%3Fcb_client%3Dmaps_sv.tactile%26w%3D900%26h%3D600%26pitch%3D-3.0346047351814462%26panoid%3DzZVZDi29D525x8rQtCqqYQ%26yaw%3D155.5605366227603!7i16384!8i8192?entry=ttu&g_ep=EgoyMDI1MTAxMy4wIKXMDSoASAFQAw%3D%3D.

with a QR code hanging on a fence to my right. This was easy for me to see…"); Dkt. 30-4 ¶ 5 ("As seen in Defendant's exhibit (ECF No. 28-7), the sign directly facing me as I entered had a stop sign on it, which I paused slightly to read"). The signed pictured at Dkt. 28-7 p. 5 similarly appears directly in front of the driver upon entering the facility. And if for some reason the driver missed that sign, the undisputed photo evidence demonstrates that PRRS's red signs canvas the Larimer Facility. (*See* Dkt. 28-7.)

In sum, nothing in Plaintiffs' Response changes the fact that Plaintiffs were put on notice of the Contract governing their use of the relevant parking facilities, including their agreement to arbitrate. Plaintiffs only needed to read the signs to be informed of the arbitration agreement, and then use the facility to accept its terms. *See Lasser v. Charter Commc'ns, Inc.,* 2020 WL 1527333, at *3 (D. Colo. Mar. 31, 2020) (granting motion to compel arbitration observing that "Plaintiff only needed to read the email to be informed of the arbitration agreement"). Indeed, similar to *Lasser,* Plaintiffs fail to present any evidence that they attempted to read the Contract but were prevented from or otherwise unable to do so. Even taking Plaintiffs' allegations that they did not "notice" the Contract as true, noticeably absent from their submission is any allegation that they were *unable* to access and review the Contract. Instead, it is undisputed that the Contract appeared in each of the parking facilities at the times Plaintiffs parked in them. In addition, there is no evidence that Plaintiffs were prevented from stopping and reviewing those terms (either from inside their vehicle) or while temporarily parked and outside of their vehicle to review them.[8] *See, e.g., Axis Venture Grp., LLC v. 1111 Tower, LLC,* 2010 WL 1278306, at *5 (D. Colo. Mar. 30, 2010) (granting motion to compel arbitration when purchaser did not read the agreement but there was no evidence that he was prevented from reading it); *Levine v. Vitamin Cottage Nat. Food*

---

[8] Each of the parking facilities has a minimum of a 15-minute grace period on entry before payment is required and a 5 to 30 minute grace period to exit the parking facility after the time paid for expires. *See* Supp. Tucker Decl. ¶¶ 4-5.

5

*Markets, Inc.*, 2021 WL 4439800, at *14 (D. Colo. Sept. 27, 2021) (granting motion to compel arbitration when plaintiffs did not provide facts or evidence suggesting that they were prevented from reviewing the agreement).

The circumstances in this case, where the Contract was conspicuously posted on red signs at the entrance and exits to the parking facilities used by Plaintiffs are nothing like the circumstances in the cases cited by Plaintiffs. For example, in *In re HomeAdvisor, Inc. Litig.*, 2019 WL 4463890, at *4 (D. Colo. Sept. 17, 2019), the court held that the plaintiffs did not have notice of terms and conditions that were merely referenced in passing (but not "explained or stated") during a phone prompt regarding an unrelated inquiry. *Id.* Plaintiffs' reliance on *Erwin-Keith Inc. v. Stewart* is also misplaced. In that case, the court rejected the appellant's arguments regarding the existence of the contract because "there was no affidavit or testimony presented." 2018 Ark. App. 147, 10, 546 S.W.3d 508, 513 (2018). Here, PRRS submitted sworn testimony and photographs demonstrating the existence of the Contract at the parking facilities.

Plaintiffs also cite *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1030 (D. Colo. 2012) for the proposition that there can be no meeting of the minds when a party is unaware of a contract because it was hidden or obscured. In *Grosvenor*, however, the court held that the plaintiff *did have notice* of the arbitration provision even though the plaintiff would be required to navigate through two separate links to review the terms and may not have had internet access to those links because the agreement was to set up internet service. *Id.* at 1030-1032. Nevertheless, and recognizing that this presentation of the terms was "hardly a model of clarity," the court concluded that they "were sufficiently conspicuous to permit a reasonable user the opportunity to review them and either agree to them or to cancel the internet service." *Id.* at 1030. Here too, Plaintiffs had a reasonable opportunity to review the conspicuous red signs located throughout the facilities that

6

they chose to park in. There is nothing in the record indicating that they did not have such an opportunity; instead, they simply failed to take advantage of it and parked in the private lot without actually reading the terms governing their use of it.

The fact that Plaintiffs failed to actually read the conspicuously posted Contract does not allow them to escape their agreement to arbitrate. Indeed, it is a cardinal rule of contract law, recognized by the Supreme Court more than a century ago, that a party is bound by a contract to which he signified his assent and he cannot be heard to complain that he did not read its contents. *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875); *see also Nardo v. HomeAdvisor, Inc.,* 2022 WL 17547940, at *5 (D. Colo. July 27, 2022) (plaintiff manifested assent to the terms and conditions, which included the arbitration agreement, "even though Plaintiff never actually clicked the hyperlink to view HomeAdvisor's Terms and Conditions"), *report and recommendation adopted,* 2022 WL 17547938 (D. Colo. Aug. 11, 2022); *see also Weller v. HSBC Mortg. Servs., Inc.,* 971 F. Supp. 2d 1072, 1080 (D. Colo. 2013) ("A party generally cannot avoid contractual obligations by claiming that he or she did not read the agreement.") (internal citation omitted).

**III.    Plaintiffs Cannot Meet Their Burden of Showing Unconscionability.**

To defeat enforcement of the arbitration provision based on unconscionability, Plaintiffs have the burden of proof. *Weller*, 971 F. Supp. 2d at 1080 (internal citation omitted). Moreover, they must demonstrate both procedural and substantive unconscionability. *Id.*

***Procedural Unconscionability.*** Plaintiffs' arguments regarding procedural unconscionability largely recast their notice arguments. (Resp. pp. 15-16.) However, as discussed above, the evidence demonstrates that the Contracts were sufficiently conspicuous so that any parker, regardless of where they park or how they pay, can see the red signs and the arbitration provision reflected in ALL-CAPS, **BOLD**, AND <span style="color:white;background-color:red">**WHITE FONT SET AGAINST A RED BACKDROP**</span> when they enter or exit the parking facilities. *See* Dkt. 28-1 through -8.

7

Unconscionability arguments regarding these exact Contracts have been rejected and Plaintiffs fail to adequately distinguish those cases from the instant case. *Tobey v. Ace Parking Mgmt., Inc.*, No. 3:24-CV-2932-X, 2025 WL 1919887, at *4 (N.D. Tex. July 11, 2025) ("the contract is not unconscionable"); *Butler v. Asura Technologies USA, Inc.,* Case No. 1:24-cv-529, Dkt. 33 (D. Colo.) ("While the first factor may point towards unconscionability, "the times in which consumer contracts were anything other than adhesive are long past." [] The other relevant factors point away from unconscionability.")

Plaintiffs misstate the facts in this case and *Tobey* in trying to distinguish it. Specifically, Plaintiffs argue that "the plaintiff in *Tobey* was required to stop and pay before entering the facility and was directly confronted with a conspicuously placed sticker containing arbitration terms prior to entering the facility." (Resp. p. 12.) However, the *Tobey* plaintiff *did not* have to stop and pay before entering the facility and instead parked and then paid at a "kiosk on the lot." *Tobey*, Dkt. 1 ¶ 37, Ex. D; *Id.* Dkt. 40 p. 16 ("In Tobey's case…[he] parked…then walked east to the payment kiosk."). Moreover, the sticker on the kiosk that the *Tobey* court found conspicuous (*id.* Ex. D) is the exact same sticker appearing on the kiosk in the 1401 Market Street Facility in this case. (Dkt. 28-5 p. 3.)[9] Plaintiffs also take an overly narrow view of alternatives, similar to the *Tobey* plaintiff, arguing that it was "take-it or leave-it[.]" (Resp. pp. 16-17.) However, there were alternative parking locations and as the *Tobey* court correctly observed: "there can be plenty of alternatives, like rideshare, public transport, and other parking lots." *Tobey*, 2025 WL 1919887, at *4.

In trying to distinguish this case from *Butler*, Plaintiffs argue that there were multiple signs in that case and "here the *single* sign containing the arbitration terms is small and elevated to a height to make it difficult to read." (Resp. p. 12.) However, it is now undisputed that all of the

---

[9] In addition, larger versions of the Contracts appear directly next to the payment kiosks in the Larimer Facility. *See* Dkt. 28-6 pp. 2-3.

8

parking facilities that Plaintiffs parked in contained *multiple* signs, as in *Butler*. *See* Dkt. 28-1, 28-3 through 28-8; Resp. p. 4 ("the signs at the East 3rd Street garage"), p. 6 ("the signs at the Market Street lot"), p. 9 ("the signs at the Larimer Street lot" and "the signs at the Laz Parking lot"); *see also* Dkt. 30-4; 30-5. The only lot that Plaintiffs even attempt to argue contains only one sign is the 3rd Street Facility (Resp. p. 5, n.1), but even there they concede that there are two different signs facing two different directions on the post appearing at the entrance/exit. *Id.* Plaintiffs argue, without citing any authority, that the sign appearing at the exit to the facility cannot retroactively bind the individual. *Id.*[10] However, the lot is fenced in and after parking in and exiting the facility on foot (or by car) the individual would pass by this second sign. In addition, there is a minimum of 15-minute grace period[11] and if the parker did not notice the sign upon entering, they would pass the sign when exiting the lot by foot (presumably within 10-minutes) and have the opportunity to walk back to their car and leave the facility without agreeing to the Contract. In sum, Plaintiffs failed to meet their burden of demonstrating that the Contract is procedurally unconscionable.

***Substantive Unconscionability.*** Plaintiffs provide the correct legal standard for substantive unconscionability, *i.e.,* "Substantive unconscionability looks to the actual terms of the contract to see if they are one-sided" (Resp. p. 15 (internal citation omitted)) but their primary arguments regarding substantive unconscionability are unrelated to the terms of the Contract. Indeed, Plaintiffs' Response does not contain a *single* argument as to how the arbitration provision is one-sided or oppressive. Nor could it. The Contract indicates that "the sole remedy for all [or an] unresolved dispute[s] is binding arbitration[.]" *See* Dkt. 28-2; Dkt. 28-5. By its plain language, this

---

[10] It is well-settled that arbitration agreements can apply retroactively. *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993).
[11] *See* Dkt. 28-2 and Dkt. 28-3 ("You must pay and/or be validated to use this Facility within the first 10 minutes of entering or you must be an authorized contract parker to enter this Facility."); *see also* Supp. Tucker Decl. ¶ 4.

term includes disputes brought by both Plaintiffs and PRRS and is not "one sided." *See Tobey*, 2025 WL 1919887, at *4.

Moreover, Plaintiffs argument, without any support, that arbitration is "costly"[12] does not render the provision unconscionable. Indeed, it is well-settled that "Substantively [] arbitration of disputes is generally not unconscionable, and in fact is encouraged by Congress." *Spain v. Johnson*, 711 F. Supp. 3d 1260, 1265 (D. Colo. 2024) (holding that arbitration provision in Lyft's terms of service was not substantively unconscionable and compelling arbitration).

Plaintiffs' remaining arguments regarding PRRS's purported business model, payment portal, and lack of grace period have no bearing on the conscionability of the arbitration provision and therefore should not be considered. In addition, they are wrong as a matter of fact. PRRS does not accept payment (or manage the "payment portal") for parking at any of the facilities used by Plaintiffs. (Supp. Tucker Decl. ¶ 3.) Indeed, Plaintiffs' own submissions demonstrate that payment is handled by third-parties. *See, e.g.,* Dkt. 30-2 and 30-3 (Best Park, Exige.) Rather than handling payment for the facilities, and as the Contract plainly states, PRRS simply monitors the facilities for compliance. (Dkt. 28-2.) In addition, contrary to Plaintiffs' assertion, there is a grace period for each of the facilities used by Plaintiffs. (Supp. Tucker Decl. ¶¶ 4-5.) In sum, Plaintiffs failed to carry their burden of showing that the Contract is procedurally or substantively unconscionable.

**CONCLUSION**

For the foregoing reasons, PRRS respectfully requests that this Court grant its Motion to Compel Arbitration.

---

[12] Plaintiffs fail to address the fact that filing fees may be waived in consumer arbitrations filed in AAA, JAMS, and in other arbitration forums, and that alternative free consumer arbitration solutions are available. *See, e.g.*, American Arbitration Association, CONSUMER ARBITRATION RULES AND MEDIATION PROCEDURES, available at: https://www.adr.org/media/3uofn4lu/consumer_rules_and_mediation_procedures_feeschedule.pdf; JAMs Declaration in Support of Application for Waiver of Fees, available at: https://www.jamsadr.com/files/uploads/documents/declaration-in-support-of-application-for-waiver-of-feesconsumers.pdf.

DATED this 22nd day of October, 2025.

Respectfully submitted,

*/s/ Kelsey C. Boehm*
Kelsey C. Boehm
FOLEY & LARDNER LLP
1144 15th Street, Suite 2200
Denver, Colorado 80202
Phone: 720.437.2013
kboehm@foley.com

Michael D. Leffel
FOLEY & LARDNER LLP
150 E Gilman St, Suite 5000,
Madison, WI 53703-1482
Phone: 608.258.4216
mleffel@foley.com

11

# CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October, 2025 I caused the foregoing **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION (DKT. 28)** to be filed with the Clerk of the Court using the CM/ECF system, which will sent notification of such filing to counsel of record for all parties.

*/s/ Kelsey C. Boehm*